UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CALVIN T. STEVENS,** | **Civil Action No. 22-1306 (RK)** |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **MERCER COUNTY CORRECTIONS CENTER, et al.,** | |
| **Defendants.** | |

This matter has been opened to the Court by Calvin T. Stevens' ("Plaintiff" or "Stevens") filing of a Complaint asserting civil rights violations arising from his incarceration at Mercer County Correctional Center ("MCCC"). For the reasons explained below, the Court dismisses the federal claims pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B), declines supplemental jurisdiction over the remaining state law claims, and provides Plaintiff with leave to amend to the extent he can cure the deficiencies in his federal claims.

## I. RELEVANT BACKGROUND

### a. Procedural History

On February 21, 2022, Stevens filed a complaint on behalf of himself and other inmates. *See* ECF No. 1. The other inmates signed the Complaint, *see id.* at 7, but they did not pay the filing fee or submit individual applications to proceed *in forma pauperis*. ("IFP application").

The matter was initially assigned to the Honorable Zahid N. Quraishi, who denied without prejudice Stevens' IFP applications on March 21, 2022, and again on June 15, 2022. [1]

---

[1] On March 21, 2022, the Court denied Plaintiff's "Emergency Application to Proceed In Forma Pauperis Without Account Certification" because Plaintiff failed to explain why he could not submit a certified account statement. *See* ECF No. 2. Plaintiff submitted a certified account

ECF Nos. 2, 6. Once Stevens submitted his certified account statement, the Court granted his

IFP application on June 28, 2022. ECF No. 9. The Court noted that the other potential plaintiffs

who signed the Complaint had not submitted IFP applications, and the Court provided them with

30 days to do so. *See id.* To date, none of other inmates who signed the Complaint have

submitted individual IFP applications. Stevens has submitted two "letter briefs" in support of his

Complaint. *See* ECF Nos. 11-12. The matter was subsequently transferred to the undersigned

on May 15, 2023. ECF No. 13.

### b. The Complaint's Factual Allegations

Plaintiff has sued MCCC, the Director of Public Safety, the State of New Jersey Fire

Marshall [sic] and Inspectors, the State of New Jersey Department of Public Health, Mercer

County, the State of New Jersey, and unidentified Mercer County Corrections Staff.[2] Complaint

at 1. Plaintiff brings his claims for relief pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. *See*

Complaint at 2.

Plaintiff provides the following facts in support of his claims for relief:

> Plaintiffs [sic] date of incarceration is different but Mr. Stevens
> entered the facility on January 23. 2022, and is currently still in
> facility breathing in deadly mold, using the mop sink to take
> showers, because regular shower has no hot & cold water, the
> temperature is still below acceptable standards, leaving all
> plaintiffs heat under extreme cold conditions, for days there is no
> water leaving fecal matter and urine in the toilet to be smelt [sic],
> officers of rank and the classification committee intermixing
> people with low court or non violent offenses with individuals with
> 1st degree or 2nd degree charges like gun etc...officials who know
> this county facility is unsafe and hazardous even to a dog still

_____

statement, but it did not cover the entire six-month period, and the Court denied that IFP
application on June 15, 2022. ECF No. 6.

[2] The Clerk of the Court listed the Office of the Public Defender as a defendant; however, it
appears that this entity is not a defendant in the current lawsuit. Instead, Plaintiff lists this entity
as a defendant in a prior lawsuit. *See* Complaint at 3. As such, the Court will direct the Clerk of
the Court to terminate this defendant from the docket.

> allow it doors to open for human habitation, prior suits against this
> facility for unsafe conditions resulted in settlements.  This facility
> its workers both administrative & correctional negligent in it [sic]
> duty to the public and to the administration of public safety.
>
> This Facility's Handbook is revised in 2019 and prints false
> material adding to fraud by publication, material that is not
> followed.
>
> The medical staff commits medical malpractice, medication is
> issued late, the medical forms for treatment is not being followed
> per protocol, even diabetic insulin is being given late, the
> individuals claiming to be nurses are unsure of treatment, it is
> unsure to plaintiffs if they are properly certified by the state's
> medical school to do the job their [sic] doing.

Complaint at 6.

In Plaintiff's "emergency" IFP application, he also states that "there is no heat (either

ventilation or shower)" and asserts that the lack of heat exacerbates the spread of COVID-19

variants and other illnesses at MCCC.  *See* ECF No. 1-3, Emergency IFP Application at 1.

Plaintiff also complains about a lack of supplies, including a lack of toilet paper for several days.

*See id.* at 2.  Plaintiff also contends that MCCC is overcrowded during the "deadly plague" of

COVID-19 and that there is hazardous "black mold" and "air particulars/pollents" at MCCC.  *Id.*

at 2.

Plaintiff has submitted a "Brief" in support of his Complaint that reiterates and amplifies

his allegations.  Plaintiff states that there is black mold in the showers and that the New Jersey

Health Department has determined that "long term exposure" to this black mold is unsafe and

can cause lung failure, cancer, and other serious health problems.  Plaintiff further contends that

the black mold spores are so dangerous that houses, apartments, and other structures containing

these spores have been evacuated and deemed uninhabitable.  *See* Brief at 13-14.  Plaintiff also

complains about "discolored forms of dust and hazardous materials spewing from all the

vents[.]"  *Id.* at 15.

3

Plaintiff contends that the State of New Jersey, the Department of Health, and the Fire Marshal are tasked with ensuring that health and safety regulations are followed, but they have negligently and willfully failed to oversee MCCC. *See id.* at 14. In his Brief, Plaintiff states in passing that Warden Charles Ellis oversees MCCC and contends that Ellis "is fully aware these detrimental conditions persist on a public hazardous level and this facility is cited to be shut down by the State." *Id.* at 16.

Plaintiff also contends in his Brief that employees feel unsafe, leading to worker shortages. *Id.* at 17. Plaintiff further contends that "superior ranking officers conspire with each other to deprive us plaintiffs of rights, such as masks, properly issued clothing, shoes, and vital supplies" at MCCC. *Id.* Plaintiff asserts that unnamed corrections officers conspire to promote violence in the facility by placing violent inmates with nonviolent ones and "watch inmates assault other individuals" due to personal relationships they may have with the inmates or their family members. *Id.*

Plaintiff also generally contends that MCCC lacks oversight and that the corrections officers are not equipped to deal with inmates with mental illness or disabilities, and that mentally ill and disabled inmates are "intermix[ed]" with other inmates who will harm them. *Id.* at 18. According to Plaintiff, MCCC is known for "inmate on inmate" violence and corrections officers improperly use pepper spray, mace, and other agents on inmates. *Id.*

## II.   STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a

claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage, the Court accepts facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citing *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). The Court does not credit conclusory allegations. *Iqbal*, 556 U.S. at 678. Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   **DISCUSSION**

The Court liberally construes Plaintiff to assert civil rights violations pursuant to 42 U.S.C. § 1983. From the outset, the Court dismisses with prejudice the § 1983 claims against the State of New Jersey and the New Jersey Department of Public Health for failure to state a claim for relief because the state and state entities are not "persons" under 42 U.S.C. § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 65 (1989) (holding that "a State is not a person within the meaning of § 1983"). Moreover, a state and its entities are not "persons" that may be sued under § 1983 regardless of whether the state has waived immunity. *See Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 549 (D.N.J. 2002) (citing *Will*, 491

U.S. at 70–71).  The Court also dismisses with prejudice the § 1983 claims as to MCCC, as this entity is not a proper defendant in a § 1983 action.  *See Crooks v. Passaic Cnty. Sheriff's Department/Jail*, 2007 WL 923330, at *2 (D.N.J. Mar. 26, 2007) (collecting cases).

The Court next addresses Plaintiff's request to act as a class representative and sue on behalf of other inmates.  It is well established that a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself.  *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991).  Accordingly, Plaintiff cannot proceed with a class action in the absence of counsel.  *See Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) ("[W]e do not question the District Court's conclusion that pro se litigants are generally not appropriate as class representatives."); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (per curiam) ("Lewis, who is proceeding pro se, may not represent a putative class of prisoners.").  And although the Complaint is signed by other potential plaintiffs, none of these potential plaintiffs submitted the filing fee or individual IFP applications.  As such, Stevens is currently the only plaintiff in this action, and class action status is denied without prejudice.

In addition to styling his Complaint as a class action, Stevens also impermissibly seeks to vindicate the constitutional rights of other inmates.  For instance, Plaintiff alleges that inmates are not provided medication on time, particularly diabetic inmates. Plaintiff also contends that corrections officers are not equipped to deal with mentally ill and disabled inmates and allow them to be placed with violent offenders.  There are no facts in the Complaint, however, to suggest that Plaintiff is diabetic, mentally ill, and/or disabled.

"[T]hird parties lack standing to bring claims under § 1983 for violations of the constitutional rights of another."  *Norcross v. Town of Hammonton*, Civ. No. 04–2536, 2006 WL

6

1995021, at *1 (D.N.J. July 13, 2006); *see also Estate of Andujar by Kincaide v. Cnty. of Cumberland*, No. 1:22-cv-06372(NLH-AMD), 2023 WL 4784214, at *11 (D.N.J. Jul. 27, 2023) ("Plaintiff lacks standing to assert claims of constitutional violations suffered by inmates and has failed to allege facts sufficient to show that [plaintiff] suffered a violation of his constitutional rights). The claims regarding inadequate medical care and reasonable safety are dismissed without leave to amend to the extent Plaintiff is attempting to bring those claims on behalf of other inmates.

Moreover, as explained below, Plaintiff fails to provide sufficient facts to suggest that his own rights to adequate medical care and reasonable safety have been violated. The Constitution requires "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In addition, prison officials "must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation mark omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see also Duran v. Merline*, 923 F.Supp.2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety") (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). In order to state a claim for relief, Plaintiff must show a "(1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (cleaned up). To state a Fourteenth Amendment claim for failure to protect, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial

7

risk to his health and safety, and (3) the official's deliberate indifference caused him harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. 834).

Although prison officials can be liable under § 1983 for failing to provide required medication on time, for placing nonviolent and violent inmates together, and for improperly using mace or pepper spray on inmates, Plaintiff has not provided sufficient facts to suggest that he faces a serious risk of harm due to any of these practices. In addition, Plaintiff does not provide sufficient facts identifying the medical professionals who failed to provide medication to him or the corrections officers responsible for placing violent and nonviolent offenders together and/or for using mace improperly.[3] Nor does he allege that any corrections staff acted with deliberate indifference. For these reasons, the Fourteenth Amendment claims premised on the failure to provide adequate medical care and denial of reasonable safety fail to state a claim for relief are dismissed without prejudice pursuant to the Court's screening authority under § 1915(e)(2)(B).

Plaintiff also attempts to bring conspiracy claims under §§ 1983, 1985, and 1986, against corrections staff. Plaintiff alleges in a conclusory manner that unnamed corrections staff within

---

[3] Civil rights claims may be asserted against fictitious defendants pursuant to New Jersey's fictitious defendant rule, which reads as follows:

> In any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification.

N.J.R. 4:26–4. "The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394, 396 (1973)). The fictitious name designation also must have appended to it "an appropriate description sufficient to identify" the defendant. *Id.* (quoting *Rutkowski v. Liberty Mut. Ins. Co.*, 209 N.J. Super. 140, 506 A.2d 1302, 1306–07 (1986)). Here, Plaintiff has sued corrections staff in general, but these Defendants are not sufficiently described or differentiated as required by the fictitious defendant Rule.

MCCC conspire to promote violence among inmates by placing violent and nonviolent offenders together.  In order to demonstrate a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'"  *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003).  Conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010) (holding that a § 1983 conspiracy claimant must assert facts from which a conspiratorial agreement can be inferred and that conclusory allegations are not sufficient).  A civil rights conspiracy also requires "a predicate federal violation" to "anchor" the claim. *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), aff'd, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit* 19, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege."). Because Plaintiff's allegations of conspiracy are conclusory and because he fails to plead a predicate violation to anchor the claim, his § 1983 conspiracy claims are dismissed for failure to state a claim for relief.

Moreover, Plaintiff does not provide sufficient facts to state conspiracy claims under §§ 1985 or 1986.  *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an

injury to person or property or the deprivation of any right or privilege of a citizen of the United States."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1206 (3d Cir. 1988) (stating the elements of a § 1985(2) claim regarding a conspiracy to obstruct justice by intimidating parties, witnesses, or jurors); *see also Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) ("[T]o maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy."). Because Plaintiff merely lists these statutory provisions without providing supporting facts, his §§ 1985 and 1986 conspiracy claims are also dismissed without prejudice for failure to state a claim for relief.

Plaintiff also contends that his living conditions at MCCC, which allegedly include exposure to hazardous mold, human waste, and extreme temperatures, as well as overcrowding, and a lack of toilet paper and hot water, violate his constitutional rights. To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at

68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

Here, the Court need not determine whether Plaintiff's allegations regarding exposure to mold, extreme temperatures, human waste, and overcrowding are serious enough to violate the Fourteenth Amendment. That analysis turns on the severity and duration of those conditions.[4] *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that inmates should not be "expose[d] to [contaminants] that pose an unreasonable risk of serious damage to his future health"); *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (considering the degree of prison overcrowding that violates the Fourteenth Amendment and finding that pretrial detainees did not have a clearly-established right to avoid triple-celling or mattresses on the floor); *Fontroy v. Owens*, 150 F.3d 239, 244 (3d Cir. 1998) (considering deliberate indifference claim based on asbestos exposure in prison); *Martin v. Gearhart*, 712 F. App'x. 179, 187 (3d Cir. 2017) (finding that sustained exposure to human waste can state a claim for relief under § 1983 but that exposures of "limited severity and duration" do not violate the Constitution); *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (explaining that the factors relevant to claims based on low cell temperature, are "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold").

---

[4] If Plaintiff submits an amended complaint, he should provide additional facts about the severity and duration of the conditions he personally endured.

Even if some of the conditions and deprivations alleged by Plaintiff are sufficiently severe and longstanding enough to amount to punishment, Plaintiff fails to plead facts showing that any of the remaining Defendants acted with deliberate indifference, meaning that they consciously disregarded a serious risk to his health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67–68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

Here, Plaintiff has sued the Fire Marshal and Director of Public Safety, but his complaint provides no well-pleaded facts suggesting that these individuals knew about his exposure to mold, extreme temperatures, human waste, or other unsanitary conditions at MCCC. Instead, his allegations against these officials appear to be based on respondeat superior, which is not a valid basis for liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Plaintiff also mentions Warden Charles Ellis in passing in his supporting Brief, but he has not provided sufficient facts to suggest that Warden Ellis had actual notice of any of the conditions or that any of the conditions were so pervasive or well-documented that Ellis must have known

12

about them.  Because Plaintiff has not pleaded sufficient facts regarding the subjective elements of deliberate indifference with respect to the Fire Marshal, the Director of Public Safety, or Warden Ellis, the Court dismisses without prejudice Plaintiff's conditions of confinement claims for failure to state a claim for relief.

Plaintiff may be attempting to assert claims against the County of Mercer, pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  In that decision, the Supreme Court recognized that while local government units can be liable under § 1983, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Thus, a local government cannot be held liable for "an injury inflicted solely by its employees or agents." *Id.* at 694.  A § 1983 claim against a municipality may proceed in two ways.  *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019).  A plaintiff may allege that an unconstitutional policy or custom of the municipality led to his or her injuries, *id.* at 798 (citing *Monell*, 436 U.S. at 694), or that his injuries were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (explaining that the second type of *Monell* claim involves failures to train, supervise, or discipline).

To assert a *Monell* claim against the County, Plaintiff would need to provide facts showing that the County had a relevant policy or custom and that policy or custom was the moving force behind the constitutional violation or violations.  *See, e.g., Natale*, 318 F.3d at 583–84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).  Plaintiff must identify a specific policy or custom of the County that caused the constitutional violation at issue and must typically allege a pattern of similar past conduct to

show that the County was on notice that the policy or custom caused the alleged violation.  *See, e.g.*, *Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F. App'x. 759, 760 (3d Cir. 2021) (affirming dismissal of *Monell* claim where Plaintiff did not sufficiently allege that County hospital had a history of providing inadequate care to nursing home residents after they fall or was otherwise indifferent to their post-fall medical needs and failed to allege a pattern of prior incidents evidencing deliberate indifference).  Alternatively, Plaintiff could state a *Monell* claim by alleging a failure to supervise, train, or discipline, and must provide facts showing that the failure amounts to deliberate indifference to the constitutional rights of those affected.  *Forrest*, 930 F.3d at 106.  Here, Plaintiff has not provided sufficient facts to suggest that a specific policy or custom of the County caused any violations of his constitutional rights or that the County was on notice through a pattern of prior violations.  Nor has he alleged deliberate indifference by the County through its failure to train, supervise, or discipline.  As such, the Court dismisses without prejudice the § 1983 claims against the County of Mercer for failure to state a claim for relief.

In addition to his federal claims, Plaintiff may be attempting to assert state law claims for negligence, medical malpractice, and/or fraud.  Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same).  Title 28 U.S.C. § 1367 (c)(3) provides that district courts "may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction."  *See also Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (same).  As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state law claims unless

14

considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original). "Additionally, the federal court should be guided by the goal of avoiding needless decisions of state law ... both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726. Here, the Court has dismissed the federal claims at an early stage and declines supplemental jurisdiction over any potential state law claims at this time.[5]

For the reasons explained above, the federal claims are dismissed pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Plaintiff may submit an amended complaint within 45 days to the extent he can cure the deficiencies in his Original Complaint. In this regard, the Court notes that Plaintiff has submitted additional "briefs" in support of his claims for relief. The Court declines to consider these piecemeal submissions as amendments to the Original Complaint, and Plaintiff should refrain from making such submissions in the future. Instead, Plaintiff should submit a single all-inclusive amended complaint within 45 days if he believes he can cure the deficiencies in some or all of his federal claims.[6] An appropriate Order follows.

Robert Kirsch
United States District Judge

---

[5] If Plaintiff submits an amended complaint, he is free to reassert his state law claims. If Plaintiff states one or more federal claims, the Court will address the state law claims at that time.

[6] If Plaintiff chooses to submit an amended complaint, that amended complaint will replace his Original Complaint and should include all the facts Plaintiff wishes the Court to consider. Plaintiff should not submit a "Brief" in support of his amended complaint. Instead, Plaintiff should include all his facts in the body of his amended complaint.